IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| BRENDA S. DOBSON, | ) | CV-04-1365-MA |
| | ) | |
| Plaintiff, | ) | OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | | |

MARSH, Judge:

    MAX RAE
    PO BOX 7790
    Salem, Oregon  97303

        Attorney for Plaintiff

    KARIN J. IMMERGUT
    United States Attorney
    District of Oregon
    NEIL EVANS
    Assistant United States Attorney
    1000 S.W. Third Avenue, Suite 600
    Portland, OR  97204-2902

FRANCO L. BECIA
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075

   Attorneys for Defendant

**BACKGROUND**

Plaintiff, Brenda Dobson (Dobson), brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act).  42 U.S.C. §§ 401-33.  This court has jurisdiction under 42 U.S.C. § 405(g).

Dobson filed for DIB on March 27, 2002, alleging a disability onset date of August 16, 1988, which she later amended to December 1, 1994.  Dobson's date last insured (DLI) for DIB was December 31, 1994.  Under Title II, a claimant must show that she became disabled during a period in which she had "insured status" under the program.  See 42 U.S.C. § 416(I)(3).  Thus, to qualify for DIB, Dobson had to prove that she was disabled on, or before, December 31, 2004.

Dobson alleges disability due to residuals of multiple surgical procedures on her left knee, and problems with her right knee, hip, back, and shoulders.  She was 46 years old as of her DLI, and had an Associate's Degree in science.  Her past relevant work was as a licensed vocational nurse.

Following a hearing, the ALJ found Dobson not disabled in a written decision dated November 14, 2003. The Appeals Council also denied Dobson's request for review on August 25, 2004, making the ALJ's decision the final decision of the Commissioner. On appeal to this court Dobson contends the Commissioner erred by (1) failing to find her left knee impairment met or equaled a listed impairment, at step three of the sequential evaluation; (2) incorrectly assessing her residual functional capacity (RFC); and (3) failing to meet her burden, at step five of the sequential evaluation, of proving that Dobson could perform other work.

For the following reasons, the Commissioner's decision is affirmed and this case is dismissed.

## **STANDARD OF REVIEW**

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

**DISABILITY ANALYSIS**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

Here, at step one, the ALJ found that Dobson had not engaged in substantial gainful activity since her alleged onset date. 20 C.F.R. § 404.1520(b).

At step two, the ALJ found Dobson's residual multiple surgical procedures to the left knee constituted a "severe" impairment, within the meaning of the Act. 20 C.F.R. § 404.1520(c).

At step three, the ALJ found that Dobson's impairments did not meet or equal the requirements of a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

The ALJ found that Dobson's RFC, as of December 1, 1994, enabled her to perform a modified range of sedentary work. He found she had the RFC to lift and/or carry up to 10 pounds occasionally and less than 10 pounds frequently; she could stand and/or walk for up to two hours of an eight-hour workday with the assistance of a cane; she could sit for up to six hours of an eight-hour workday; she could not walk on uneven ground or climb ladders or scaffolds; she could perform only occasional bending, squatting, kneeling, crouching, crawling or stair climbing; and she was limited to tasks involving no more than three steps. 20 C.F.R. §§ 404.1520(e), 404.1545.

At step four, the ALJ found Dobson could no longer perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f).

At step five, the ALJ found that Dobson could perform work existing in significant numbers in the national economy, such as charge account clerk, food and beverage order clerk, and semiconductor bonder.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

## DISCUSSION

### I. Dobson failed to prove her impairments met or equaled a listed impairment.

Dobson contends the ALJ erred by finding that her condition is not equivalent to a presumptively disabling condition in the Listing of Impairments (listings).  At step three, the claimant has the burden of showing through medical evidence that her impairments "meet all of the specified medical criteria" contained in a particular listing.  Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 404.1512(a).

Dobson argues that she has demonstrated that her impairment meets or equals Listing 1.02(A), based on a major dysfunction of a joint.  20 C.F.R. Part 404, Subpart P, appendix 1 § 1.02.  The regulations define this category of impairment as follows:

> Characterized by gross anatomical deformity (e.g. subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation or motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  With:
>
> A.  Involvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

6 - OPINION AND ORDER

Id.  Inability to ambulate effectively is defined by the regulations as:

> [A]n extreme limitation of the ability to walk; i.e. an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of hand-held assistive device(s) that limits the functioning of both upper extremities.

Id. at 1.00(B)(2)(b).

The ALJ considered Dobson's equivalency argument, first advanced at her hearing, and concluded that her use of a cane was not medically necessary -- rather she was using a cane for her "subjective discomfort" -- and even still, the cane did not limit the functioning of both upper extremities.

According to Dobson, the ALJ erred in concluding that listing 1.02(A) could only be satisfied by a need to use a hand-held assistive device that limits the function of both upper extremities.  Dobson argues that since the ALJ's RFC assessment limited her to work where she could use her cane to walk, it was inconsistent for him to conclude, at step two, that her cane was not medically necessary.

In her reply memorandum, Dobson also argues that the regulation does not actually require that the assistive device limit the function of both upper extremities, as it states, because in 66 Fed. Reg. 58010-01, 58026-27 (Soc. Sec. Admin. 2001), the Commissioner commented that "anyone with an

7 - OPINION AND ORDER

ineffective gait who cannot use assistive devices would also meet the definition of inability to ambulate effectively." Again relying on the ALJ's RFC assessment, Dobson argues that her limitation from walking on uneven ground shows that she is an ineffective ambulator.

Dobson's argument is unpersuasive for two principle reasons. First, her reliance on the ALJ's RFC assessment to buttress her contention that she requires the assistance of a cane is misplaced. The ALJ assesses a claimant's residual functional capacity only if he determines that a claimant does not meet or equal a listed impairment at step three. 20 C.F.R. § 404.1520. The RFC assessment does not constitute objective medical evidence, and more often than not, it reflects more restrictive work-related limitations than the objective medical evidence actually supports. In other words, the ALJ commonly gives the claimant the benefit of the doubt about her work-related limitations when assessing her RFC. However, "[m]edical equivalence must be based on medical findings." 20 C.F.R. § 404.1526; see also Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999).

Such was the case here, where the ALJ specifically stated, at step three, that no physician had ever prescribed Dobson a cane, and that Dobson's "subjective complaints generally exceed objective findings and the severity of her complaints are not

fully credible." As the Commissioner correctly notes, Dobson has made no showing that the record medical evidence actually supports a finding that she is unable to walk without the assistance of a hand-held device, let alone one that requires use of both upper extremities. Thus, it is entirely irrelevant, for step three purposes, that the ALJ allowed for Dobson's subjective need for the assistance of a cane in the RFC assessment.

Second, with respect to Dobson's argument regarding the Commissioner's commentary, I find that the Commissioner's reference to those "who cannot use assistive devices" means people who are wheel-chair bound, or who simply cannot get around, not people who can walk with the assistance of a cane. The comment plainly states, "An individual who can walk adequately with a cane or other device that affects only one upper extremity cannot be considered as incapable of any gainful activity...". 66 Fed. Reg. 58010-01, 58027 (Soc. Sec. Admin. 2001).

Accordingly, I find the ALJ's determination that Dobson failed to prove equivalency to a listed impairment was based on substantial evidence.

**II. The ALJ properly assessed Dobson's residual functional capacity.**

A claimant's RFC is the most an individual can still do despite her limitations. SSR 96-8p. It is an "administrative assessment of the extent to which an individual's medically

9 - OPINION AND ORDER

determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  Id.

In the instant case, the ALJ determined that as of her DLI (December 31, 1994), Dobson remained capable of performing a modified range of sedentary work.  According to Dobson, the ALJ erred in this assessment because, "medical records show [she was] unable to perform even this level of work activity in the period before she turned 50 in January, 1998."  In particular, Dobson contends the ALJ failed to incorporate the opinions of Clive Segil, M.D. and Alex Gazaui, M.D., and instead erroneously relied on the opinion of Warren Strudwick, Jr., M.D.

Before reviewing these physicians' opinions, it merits noting that work-related limitations assessed after a claimant's DLI are relevant to assessing her RFC before her DLI only insofar as work-related limitations on or before that date have been inferred by the medical provider.  Such inferences will be assessed by the ALJ under the medical provider credibility analysis.

The medical provider credibility analysis is as follows: the relative weight afforded the opinion of a physician depends upon his or her opportunity to observe and to get to know the patient as an individual.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

1996). The Commissioner must provide "clear and convincing reasons," supported by substantial evidence in the record, for rejecting the opinion of a claimant's physician when it is not contradicted by another doctor, and "specific and legitimate" reasons when it is. See Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600-601 (9th Cir. 1999).

The Commissioner is not bound by a physician's opinion of a claimant's disability or employability, because these are issues reserved to the Commissioner. See 20 C.F.R. § 404.1527(e); SSR 96-5p. The Commissioner is also not required to "accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Baston v. Commissioner, 359 F.3d, 1190, 1195 (9th Cir. 2003).

**A. Dr. Segil**

Dobson first visited Dr. Segil in November, 1997, reporting a history of seven surgeries on her left knee, and complaining of pain in her right knee, lower back, right hip, and right leg, as well. Dr. Segil performed a number of clinical and imaging tests, from which he assessed Dobson with moderate pain that would increase with standing, bending, and walking. Dr. Segil noted that Dobson was "considerably overweight," that she tended to exaggerate her symptomology, and that she "[held] her knee stiff in a purposeful stiff manner." However, he determined that

everything that could be done for her left knee had been done, and thus her knee condition was "permanent and stationary." Thus, he recommended no heavy lifting, prolonged weight bearing, climbing, walking on uneven ground, squatting, kneeling, crouching, or pivoting, and no prolonged standing, kneeling, or bending.

In making his RFC assessment, the ALJ noted that he gave "significant weight" to the opinion of Dr. Segil. He also cited extensively to Dobson's medical history prior to her DLI. Dobson contends the ALJ did not faithfully incorporate Dr. Segil's restrictions when he determined Dobson could only "occasionally" squat, kneel, crouch, and climb stairs. "Occasional" is defined as "occurring from very little up to one-third of the time." SSR 83-10.

I disagree, because the ALJ did not purport to credit Dr. Segil's opinion 100 percent -- he gave it "significant weight." Although Dr. Segil's assessment was made almost three years after Dobson's DLI, the ALJ found that it "reasonably approximat[ed]" her work-related limitations as of December 31, 1994. Furthermore, even if the ALJ had erred by failing to adopt, *in toto*, Dr. Segil's restrictions for Dobson, the error was harmless because the jobs he found Dobson remained capable of performing did not, themselves, require any squatting, kneeling, crouching, or stair climbing.

B.  Dr. Gazaui

In January, 1998, Dr. Gazaui performed a "Medical/Legal Evaluation" of Dobson's "injuries sustained during the course and scope of employment on 8/21/99."  He reviewed her medical records up to mid-1997, and examined her knees and back.  Based on this one-time examination, and his records review,[1] Dr. Gazaui opined that Dobson was not "capable of returning to full-time gainful employment, and must be considered totally disabled."

The ALJ gave little weight to Dr. Gazaui's opinion, stating that Dr. Gazaui provided no basis for his opinion, it took the form of an improper vocational opinion, and it was contradicted by a later opinion by Dr. Strudwick, from January, 1999, that Dobson was capable of performing sedentary work.

According to Dobson, Dr. Gazaui's January 9, 1998, examination and records review provide ample basis for his opinion that she was incapable of full-time work.  He "observed marked quadriceps weakness, limited and painful motion, abnormal gate [sic] and distress."

However, even if Dr. Gazaui's observations based on his short clinical examination of Dobson could be considered a proper basis upon which to formulate an assessment of a patient's work-

---

[1] Notably, Dr. Gazaui began treating Dobson after this assessment.  In March, 1999, Dr. Gazaui performed an arthroscopic chondroplasty of Dobson's right knee, and found that she had traumatic arthritis.  In March and July, 2001, he also made revisions to Dobson's left knee replacement.

related functional limitations, Dr. Gazaui failed to provide such an assessment. Instead he stated his opinion in the form of an improper vocational finding, which the ALJ was not required to credit.

A doctor's statement about a claimant's ability to work is not a proper medical source opinion, but an administrative finding reserved to the Commissioner. SSR 96-5p. Disability has both a medical and vocational component. See 20 C.F.R. § 416.960. Because a medical source does not have the expertise to comment on the vocational component of disability, a statement by a medical source that a person is unable to work is not accorded much weight. See 20 C.F.R. § 416.927(e)(1).

Dobson also argues the ALJ was wrong to defer to Dr. Strudwick, whose report was a year more remote from her DLI than Dr. Gazaui's. However, she misses the significance of Dr. Strudwick's opinion in the ALJ's medical provider credibility assessment. Dr. Strudwick contradicted Dr. Gazaui's opinion by finding Dobson capable of sedentary level work after Dr. Gazaui opined that she couldn't work at all. Thus, the ALJ's reasons for rejecting Dr. Gazaui's opinion only had to be specific and legitimate. I find that they were.

### III. **The ALJ's step five determination was based on substantial evidence.**

Dobson argues the ALJ erred, at step five of the sequential evaluation, by failing to pose a complete hypothetical question

14 - OPINION AND ORDER

to the vocational expert (VE), and by adopting the VE's testimony, which was allegedly inconsistent with the Dictionary of Occupational Titles.

At step five of the sequential evaluation, the Commissioner must show that the claimant can do other work which exists in the national economy. Andrews v. Shalala, 53 F.3d at 1043. The Commissioner can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant. Id. The assumptions in the hypothetical question must be supported by substantial evidence. Id. While a VE may be used to provide more specific information about the requirements of a particular job as it is performed in a particular setting, the ALJ relies primarily on the Department of Labor publication Dictionary of Occupational Titles (DOT) including its companion publication, Selected Characteristics of Occupations, for information about the requirements of work. 20 C.F.R. Part 404, Subpart P, Appendix 2 § 200.00(b); see also SSR 00-4p. These references classify occupations by exertional level, as defined in 20 C.F.R. § 404.1567, and by skill level, as defined in 20 C.F.R. § 404.1568.

Here, the ALJ asked the VE to consider a hypothetical individual of the same age and educational background as Dobson, with the capacity to lift and carry 10 pounds occasionally and less than 10 pounds frequently, to stand at least two hours out

15 - OPINION AND ORDER

of an eight-hour workday, and to sit at least six out of eight hours. In addition, he limited this person to walking only with a cane, and never walking on uneven ground, or on ladders or scaffolds, and only occasionally bending, squatting, kneeling, crouching, crawling, or using stairs. Also, this person would be limited to "simple one, two three step work."

I find this hypothetical properly incorporated the limitations supported by substantial evidence in the record, and rejected those that were not. See Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001)(ALJ is free to accept or reject restrictions that are not supported by substantial evidence).

In response to the ALJ's hypothetical, the VE testified that this hypothetical person could perform work as a charge account clerk, food and beverage order clerk, and semi-conductor bonder. Dobson argues the ALJ erred by not addressing, in his written decision, what she perceives is a conflict between the VE's testimony and the DOT. According to Dobson, the hypothetical person in the ALJ's question had a General Educational Development (GED) level of one or two, but the jobs identified by the VE require a GED level of three.

This is not so much a conflict between the VE's testimony and the DOT, though, as a conflict between the VE's translation of "simple one, two, three step work" into a GED level, and Dobson's own. Hence, Dobson asks me to render my own judgment as

to which GED level corresponds to Dobson's RFC. However, the court will not substitute its judgment for the ALJ's if the evidence support's the ALJ. <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001). I find that it does. The VE, who is specially trained in making these types of determinations, explained at the hearing that a GED level of three is consistent with an individual who was educated through the seventh or eighth grade, as was Dobson. As noted above, however, Dobson has an Associates Degree in Science. The limitation to three-step work is accounted for in the Specific Vocational Profile (SVP), according to the VE, which for these jobs was two on a scale of one to nine. Accordingly, I find no error in the ALJ's adoption of the VE's testimony, nor any reason for him to comment on it in his written findings.

### **CONCLUSION**

Based on the foregoing, the Commissioner's final decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this __18__ day of October, 2005.

                                     /s/ Malcolm F. Marsh
                                     Malcolm F. Marsh
                                     United States District Court Judge